IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| Cornelius Moore, | ) Case Docket: **13 CV14 AT 27**35 |
| | ) |
| Plaintiff, | ) CIVIL RIGHTS ACTION |
| vs. | ) |
| | ) Jury Trial Demanded |
| Department Of Veterans Affairs; | ) |
| The United States of America; Ms. | ) |
| Deborah Mcalpine, Nurse | ) |
| Practitioner; Ms. Kathy Swank, | ) |
| Records Supervisor; Ms. Lisa Carroll, | ) |
| Physical Therapist; Ms.Tammy Well, | ) |
| Assistant Director; John /Jane Doe, ) | ) |
| Dir. of The Sheridan Veteran Medical | ) |
| Center; the Sheridan Va, | ) |
| Medical Center; Ms.Jacquelyn Frank | ) |
| Registered Nurse; Ms. Jill Hegy;each | ) |
| Individual is sued under both | ) |
| Their individual and official | ) |
| Capacities et.al., | ) |
| Defendants | ) |

**Comes Now**, Plaintiff, Cornelius Moore Pro Se litigant hereby respectfully

Moves this Court and timely files this civil rights action brought pursuant to 28

**U.S.C.§1331, 28 U.S.C.§ 1346** subject matter jurisdiction claiming violations of my

rights under The United States Constitution, And federal statutory law, alleging

deprivations of my rights under my **Patient Rights, 38 C.F.R. §17.33(a), for the claims**

**of procedural due process violations, violations of my equal protection rights under**

**the laws, while defendants displayed a deliberate indifference towards my serious**

**arthritic bilateral degenerative knee condition(s) in violation of my 8th, 14th**

**amendment rights under the United States Constitution and under the federal Tort**

**Claims Act for the claims of gross negligence, incompetence, fraudulent**

**misrepresentation, malpractice. Plaintiff also seek subject matter jurisdiction to**

address the alleged claims The American with Disabilities Act and the Rehabilitation act by federal authorities whom are prohibited from discriminating against the disabled based on my disabilities and depriving me of my rights, privileges, benefits, and programs by those in reception of federal funding and is thereby prohibited from depriving the plaintiff of his rights to prompt and appropriate medical treatment of his serious severe Bilateral degenerative arthritic knee condition(s).

The Theories of recovery that I seek to present and introduce into evidence before the requested/demanded Jury are the alleged Acts that also interfered with my prescribed course of treatment and intentionally with reckless disregards of my rights to be from the unnecessary wanton infliction of pain excruciating. Acts that fails to follow the necessary duty of care owed to this patient. Fraudulent misrepresentations while indicating that Opiods aren't prescribed to people with arthritic conditions. Relying on the alleged false claims, for which, there's no medical evidence, nor any medical tests or analysis that were appropriately conducted to support the required reliable factual circumstances while making the type of admissible proof necessary to collaborate their allegations that requires professional and competent action to justify actions that caused the removal from the unconstitutional adopted "Waiting List". While impermissibly relying on drugs and alcohol as basis for determining what treatment to provide in violation of my rights under the Eighth Amendment, rights under the 14th Amendment, violated my rights under 38 C.F.R. §17.47.

The Plaintiff, Cornelius Moore, hereby respectfully states the following facts to justify the relief sought:

## COUNT 1

It is asserted to at all times relevant the plaintiff Cornelius Moore originally presided in the city of Denver, state of Colorado, and arrived to the City of Sheridan, State of Wyoming on or about the 13th of December at appropriately 3:30a.m after leaving from Denver Colorado on December the 12, 2012.

At all times relevant it must be indicated that prior to my departure from Denver, Colorado by way of bus that was scheduled to depart from Denver Colorado at approximately 6:00p.m. It is further asserted that prior to my departure on or about the 12th of December, 2012, I arrived at the Denver Va medical Center to pick up my Denver Primary Care Doctor's entire prescription list that was approved for my departure to the Sheridan, Wyoming Va Medical Center.

1. The plaintiff asserts that upon his arrival to the Sheridan Va Medical Center at approximately shortly after 10:00a.m. or around that hour. If I'm not mistaken it was about 10:00a.m. When the vehicle/taxi summons by the Va authorities of the Sheridan medical hospital to pick me and another female Veteran up from the Motel that they had placed me in after my first arrival to the medical Center, that I believe was around 7:00a.m. They took my vitals and told me to go back to the hotel pursuant to their established protocol.

2. The second time that I arrived back to the hospital I was told to report to Unit 64, for which, I now presently preside act.(1-12-2013). My processing consisted of being required to remove all items that weren't clothing from my personal bags that I had brought with me for the trip to report to the Va Domiciliary. I was seen by various staff members who gave me somewhat instructions on what I was to expect the first days at the residential facility. I was told that I would be required to give-up all my belonging so that they could be placed in some type of machine that kills bed bugs if I had brought any with me from Denver, Colorado. I was also told by the same male staff member, The one that ordered me to give up all my personal belongings, "To also give him any and all medications brought with me, even though the application that I had submitted for placement into the Domiciliary Facility had instructed me to obtain at-least two weeks or more worth of medication before I left to come to the Sheridan Wyoming Va Medical Hospital. I complied with his request and was again instructed by the intake interviewing nurse to give any and all medication prescriptions that I had in my possession. I found these instructions a little odd because I felt that it was enough or that it would be proper just to show you what meds I had and then you could just properly document what I had arrived to your facility with. No, this wasn't done at all. They simply took all that I had found and it was never documented that I had give them prescriptions that I didn't even know that I had after again going through all of my belongings. I even found more prescriptions after they had given me my clothing back the next day after the bed bug process.

3

It is further asserted that on the day of my arrival while going through the processing protocols, I didn't actually start to wondering about their procedures but until actually the next day. Because, before I saw defendant Nurse Practitioner, Ms. Deborah Mcalpine, The nurse that I saw before her had ensured me on several occasions that I would be receiving all medications that I was presently receiving from my Denver Primary Care Doctor, Martin who had just provided me with the prescriptions that I had to them, The day before my arrival to the Sheridan Va Medical Hospital. I thought that if I didn't receive my meds that were being replaced by their pharmacy, Then they would take the proper dosage from my prescriptions that was reluctantly taken from me and provide me my medication in that manner. No, that wasn't the case At all. I didn't receive any type of X-Rays, no MRI's, no examination, no type of physical evaluation, nothing that would place me on notice that there's a possibility that I will now receive a more effective pain prescription then that of the hydrocodone that had been previously replaced with Oxycodone by my then Primary car Physician, P.A. David Kleberger . Who I felt had competently replaced the hydrocodone with that of Oxycodone because of the potential damaging effects that it could have on my liver, being that I had been previously diagnosed with an enlarged liver, it was also indicated that I suffered from alcoholic liver disease and had a heptic condition since at 1989.I felt that because none of the medical tests and lab procedures that one would expect to undergo prior to being subjected to possible prescription change. Especially, being that there weren't any type of the necessary and required review of my medical ailment history. In my mind I was saying to myself that such arbitrary enforcement would be criminal acts, the type of acts one could imply to be gross incompetence, malpractice, acts that lack proper procedure as recognized in the medical field. These were the acts that tend to imply that veterans aren't worth receiving any type of prescription that may possibly provide some

$\varphi$

form of effective alleviation of the pain suffered due to their service connected unfortunate severe arthritic knee medical ailments. Also, defendant, Nurse practitioner, Ms. Deborah Mcalpine impermissible indiscriminate enforcement, to which, appear to be pursuant to established procedure, practice and custom adopted by this facility, because there are to many Veterans here at this facility that are receiving worst treatment then that being unjustly and unrightfully inflicted upon this plaintiff. Her acts are those that display a deliberate indifference towards my serious severe bilateral degenerative arthritic knee condition. The only thing that was asked of me was that one of the male staff members who I expect is not of the medical personnel informed me that prior to going to sleep, that I was required to give a Urine sample. It was after Defendant Nurse Practitioner; Ms. Deborah Mcalpine had finished her shift when I was able to give them a sample of my urine. I remember it being late in the evening because I was kind of disturbed by the fact that a non-medical male staff member was at the front control desk conducting these Urine sample analysis. He didn't have on any gloves or anything that would prevent contamination of my sample provided to them. I hope that they have the video capacity to go back and review this occurrence on December 12, 2012. Committed in the late evening after dinner. It also affected mentally because in my mind I kind of felt that here we go again with the similar practices done in the criminal judicial system because inmates are the worse treated individuals on the planet because they don't have patient advocates who might actually do something for you. When I say something for you I mean that something is done in the manner of preventing one from having to deal with his excruciating pain symptoms on his own. Enduring the pain as if it's a part of his daily suffering activity. I've tolerated these types of abuses for so long that I've come to live with the fact that there's no end to my suffering. There's no end to the type of abuses inflicted upon patients because of the militant type attitude freely

5

being allowed in the medical field. I've been denied the appropriate rating because of inexperienced examiners, acts put in place to intentionally cause delays in receiving my rightful rating and now to be subjected to the monstrous misconduct by defendant Deborah Mcalpine, who acts are those that are intentional and a reckless disregards to my health, safety and wellbeing. She intentionally interfered with my prescribed course of treatment that was in place prior to my arrival to this facility. She sought to punish me because of claims made in my medical record that is not supported by the required and necessary medical competence. It's actually hearsay information that can't be shown with the required medical support. Basically she sought to deny me my protected right under both federal disability statutes. Discriminated against because of my disability in violation of the ADA & RA. She sought to enforce a practice that so wide spread that you can't do nothing but say that it's pursuant to their established protocol, directives, authority directed abuses freely committed by those employed by the federal government. To inflict further suffering on those who they seemingly seek to ensure patient failure in their pursuit of healthy independent living. I remember meeting with Ms. Deborah Mcalpine on or about the 20th of December, It was like she sought to inflict punishment upon me because of her impermissible use of the alleged drug usage to justify her actions. She was cocky with her form of enforcement. This was why they came up with what's called cruel and unusual punishment.

3. The plaintiff asserts that on or about the 20th of December, 2012, which is the date that I went to pay a visit with the Patient advocate. What prompted this visit was my inability to obtain the sought after response or reasons why defendant Nurse practitioner, Ms Mcalpine had caused only one of her unjustifiable prescribed medications to be provided directly to me from the pharmacy department. It must be indicated that at-least a couple of days prior to Dec. 20, 2012,

In a meeting had with Ms. Mcalpine she had personally informed me that she was authorizing me to pick up my own prescriptions directly from the pharmacy department in an effort to limit some of the hardships placed on my knees because of the back and forth walks to Unit 6 to obtain medications, for which, some had been changed to being indicated as Scheduled. See, being that I've been denied my statutory right and privilege to participate in the decision making issues relating to my medical pain management care, this has caused means for me to be subjected to acts that were arbitrary and capricious by those designated to issue me my meds. She never made any attempt to explain to me the drastic changes made for my medication issuing times. There were times that I would come to the window in unit 64 and denied the medication that I hadn't even received at all that day. I was highly confused about the practices that seemed to imply that these nurses enjoyed the fact that they were able to deny me the medications that has not provided me any type of relief up until this present day.

**4.** I also went to the patient advocate with the complaints that I was being denied the medical records that related to matters read in my face on different occasions by Nurse practitioner, Ms. Mcalpine and nurse Jackie. This information related to what was indicated to be words of the alleged medical officials at the Cheyenne Va medical center where I'm scheduled to undergo the total knee operation at. I was informed by the patient advocate, Ms. Nurse Jackie and others who issued my meds of the different times I'm to take my meds. I didn't understand what was going on. So, I rightfully sought copies from the Records department in order to better educate myself in regards to the times I'm to take my meds. But, I was subjected to arbitrary misconduct again by the defendant supervisor in the records department, Ms Kathy Swank. Every time I requested for all of the medical records that relaters to me since my arrival, I had to go back on numerous occasions in the same day in order to be provided more records on the

7

same day while receiving false information that she had already gave me all the records. So, if she had gave me all the requested medical records then why did I receive more on each return visit on the same day? Then she tried to make it appear as if I was a trouble maker because she wasn't doing her job. See, while going through this form of infliction of mental distress, they tried to make it appear as if I was being argumentative because I continued to tell them that I've yet to receive the same medical information read to me by both Ms. Deborah Mcalpine, nurse Jackie, and then there were medical information read from Defendant, Ms Lisa Carroll, who I also asked if I could obtain copies of the medical information that she was reading to me while in a meeting with her. See, the record must reflect that in the beginning, it was Ms. Jackie and the other heavy set nurse in unit 64 who I had originally asked them for copies of the information that they were reading off the computer that related to my medical issues. They told me that I would have to go to the records room in order to obtain copies of them. But, what disturbed me was the fact that I did receive some copies of medical information that they gave me that, told me when to go to the Labs and that I was required to <u>fast</u> that night and not to go to chow before I gave the lab the urine and some blood. So, they unknowingly gave me copies when they told me originally that I was required to get it from the records room. This is further showings of impermissible arbitrary and discriminatory enforcement in violation of my rights under 5 U.S.C.§552, and the FOIA, my equal protection rights under the 1st and 14th amendments.

**5. I**'m unjustly placed in the type of situation that implies that I'm simply a nuisance. I've never had issues with taking my meds. Nor have I've ever been found or expected of abusing any of my prescribed pain medications. Their acts are those that allow one to be placed in such unreasonable circumstances for no legitimate reason. They have this power thing going on that affects me and others rights to receive the prompt and appropriate medical treatment required.

8

You have a person who tells you that she (Nurse, Jackie) is going to do whatever is necessary to ensure that I'm provided with my appropriate pain prescription after she read the information to me off her computer and was placed on notice in regards to the true severity of my knee condition. She also made this promise when I told her about the factual circumstances that related to them fraudulently telling me that they are providing me with **Nuerontin to treat my severe arthritic knee condition.** I explained to her that this drug has not been approved by the FDA to treat such conditions. I informed her that this drug that they have me on a **scheduled** time for taking is in fact only has been approved by the FDA as a supplement for treating epilepsy. I went on to explain that they should have been trained, instructed and informed that they can now stop lying and providing the fraudulent misrepresentations about what this drug is effective in treating. I told her of the fact that The Department of Veterans Affairs even received portions of the settlement from the funds obtained by the Department of Justice and other s who participated in prosecuting the giant Pharmaceuticals responsible for causing suicides and other negative impacts on the economy, including the Department of Health and Medicaid.

**6.** Then she makes it appears as if she's e-mailing Nurse Practitioner, Ms. Deborah Mcalpine to find out why she only allowed the pharmacy to give me just the Etodolac, a previous shown to be ineffective prescription, after requesting for reasonable accommodation to limit some of the pain and suffering and the the hardships placed on my severe degenerative bilateral arthritic knees unnecessarily by those who are responsible for providing the prompt and appropriate medical treatment to veterans. Ms. Jackie gave me the notion that she was really concerned about this type of occurrence. But, instead she didn't even acknowledge me when I saw her after the previous visit had on or about the 20th of December, 2012. I mean, I was told by Ms. Jackie that I was prohibited from personally seeing Ms. Deborah Mcalpine because allegedly she was too

9

busy seeing other incoming Veterans. But, what bothered me was when I was scheduled to see her, I was required to wait until she saw an individual who had just walked up without a appointment and he received the full satisfactory responses from her that he sought.

**7.** The plaintiff asserts that the record must also reflect the fact that I had requested for a evaluation to be conducted by a pain specialist as to the appropriate and effective medications for the appropriate treatment of my severe arthritic knee conditions. She (Ms. Mcalpine) indicated that she would allow such evaluation. So, it was later indicated to be that of Ms.Lisa Carroll of the Physical therapy Department that was the alleged personnel designated to conduct the pain specialist evaluation. So, I made a visit with Ms. Carroll and was instructed that I was seeing her on the last Thursday of December, 2012. It was during this meeting that Ms. Carroll had informed me of the appointment scheduled for Cheyenne and she also scheduled me to be evaluated by the sought after appointment to see a pain management specialist medical review. So. Ms. Carroll wrote the scheduled appointment to be seen by Ms. Jill Hegy, a physical therapist in her department.

**8.** The record must also reflect that the appointment was scheduled to see Ms. Jill Hegy onn the 7th Of July because of my complaints that the consultation scheduled for Cheyenne for the purpose of scheduling the Total Knee operation was to far off. Not prompt enough due to the substantial amount of pain that I'm being unjustly required to endure. But, What had happened after I had seen Ms. Caroll on the 31st of December if I'm not confused of the exact date of her examination to see if whether I was a candidate to undergo the Total knee replacement because of the alleged concerns about my age being a factor. But, There wasn't no indication at this physical evaluation that indicated that she was providing the pain specialist evaluation approved by s Deborah Mcalpine after she instructed me that she wasnb't prescribing me but those

10

those prescriptions that had already been shown to be ineffective while presiding at my place of residence in Denver Colorado. So, I went to the physical therapy office and obtained a replacement Walker and it was at that time it dawned on me that I was to see someone about my pain management.

**9.** So, I questioned the secretary that day and told her that I thought it to be Joe Hegy because at that time I couldn't find the card that Ms. Carroll had provided to me that scheduled me to see who I now know was to be Ms. Hegy for the pain specialist pain management evaluation. But, the secretary went and questioned Mr. Joe Hegy and he indicated that he was declining to conduct the pain specialist evaluation. So, it was at that time the physical therapy secretary told me that I was scheduled to see Ms. Lisa Carroll on Monday when she returned back to the office. I went to see Ms. Carroll that following Monday and was falsely, fraudulently instructed with the misrepresentation that she was the one that conducted the pain specialist evaluation. I don't think that she is the Orthopedic Specialist who was sought to provide me with the sought after appropriate evaluation for the prescribing of a effective pain reliever for my Chronic & severe degenerative bilateral arthritic knee condition(s). I especially didn't consider Ms. Carroll to be the designated pain specialist because she refused to allow me to have the requested MRI in order to provide the reviewer's, evaluators`, potential surgeons to placed on notice of the true severity of my knee condition(s). The MRI was requested because of my awareness that the X-Rays don't provide the full documentations of various diseases that I'm faced with because none of the diseases that I'm affected with aren't indicated on the X-rays done on are around the last week of December, 2012. Ms. Lisa Carroll's acts while impermissibly indicating that she had conducted the approved pain specialist evaluation, when she didn't know that I had found the actual appointment card provided to me by her on the day

11

she had provided me the written scheduled pain specialist appointment. It appeared that her actions were in concert with the overt acts initiated by Ms. Deborah Mcalpine. Her actions were those that were to allow me to be subjected to outrageous misconduct, acts that are a reckless disregards of my pain and suffering, my safety, my wellbeing, my health, my mental state while being required to tolerate and endure the suffering ,for which, is the approximate cause of the services provided to the U.S. Army,  Where the damage to my knees originated.

**10.** I'm highly disappointed with Ms. Lisa Carroll's corrupted and deceptional actions in furtherance of the abuses freely initiated by Nurse practitioner, Ms. Deborah Mcalpine, and done while the Director/Chief was placed on notice of the abuses done and failed to or refused to correct the wrong brought to his attention, or the wrongs that he should have known was wrong because of his obligation to conduct a thorough investigation after he had conducted the scheduled appointment after I had followed their chain of command requirements prior to being scheduled to see him through his secretary. I'm also particularly upset and feel threaten by these government officials because the record must reflect that I provided Ms. Carroll, Ms. Tammy Well, Ms. Jackie, and other medication issuing nurse at the nurses issuing windows in our Unit 64, with the information involving the pharmaceutical, **WARNER-LAMBERT, whom the Department of Veterans Affairs obtained portions of the damages provided by the pharmaceutical that fraudulent misrepresented what the drug, Nuerontin conditions it was effective in treating. I even had one of window prescription issuing nurse look in the medical book that she had and she said that you are right, because a more updated version of the drug didn't have the same information provided in the 2004 medical book that she reviewed. She is a white attractive while female.** *Even after she verified my information*

*about the pharmaceutical she still the following day while I was passing her window, She had the audacity to ask me if I had taken my Gabapentin/Nuerontin yet.*

11. I personally took it upon myself to see that these alleged consultations and referrals were actually initiated. They weren't but until after I took the initiative to follow-up on these matters concerning my health. The medical records will provide a more exact time period of these occurrences that happened around the time when I served defendant Mr. John Doe Chief /Director with a copy of the Notice of Claims pursuant to the **Federal Tort Claims Act** that I originally gave to Ms. Tammy Well on the day that she summons me to her office to see if there had been any type of improvement concerning the appropriate treatment sought and the copies of the Medical records demanded from the uncooperative defendant, Ms Kathy Swank supervisor of the Release of Information Office. My response was, serving her a copy of the Tort Claim Notice that she indicated would take to long to read before giving me a response about the injustices inflicted upon me, for which, a lot of information that was indicated in the tort claim that included a lot more of injustice practiced after the approved scheduled meeting had with her and defendant, Chief/Director of this facility. The meeting gave them notice of some of the many abuses freely being committed while under their supervision and authority and responsibilities owed to these veterans brought here to be placed under their care.

As a result of the deliberate indifference, cruel and unusual punishment, interference with my prescribed course of treatment, and while impermissibly enforcing the alleged illegal drug usage policy, custom, practice, process, and a initiated procedure prior to my arrival on or about the 12th of December, 2012., as basis for denying one his proper and appropriate pain regiment plan in violation of my eighth, and fourteenth amendment rights to the United States Constitution, violated just about every right protected under **38 C.F.R. § 17.33a, particularly**

/3

**denied me the dignity and respect, the protected federal right to prompt and appropriate medical treatment, thereby enhancing and causing the escalation effect of my deterioration effects of my arthritic degenerative process, causing the feeling of grief, sadness, hopelessness, and denied of the right to participate in the decision making aspect for the planning of my medical treatment plan, for which, while suffering these abuses while she was acting in her individual capacity, for which, the amount of damages is sought in the amount of $6,000,000, severally, individual or jointly with that of her insurance carrier, and to be provided and other equitable** appropriate relief that the court may deem just and necessary. The plaintiff, thereby sues nurse practitioner, Ms. Deborah Mcalpine for the acts that failed or refused to follow the necessary and required duty of care owed to this Veteran, thereby causing the unnecessary wanton infliction of excruciating pain, causing one to feel hopeless, humiliated, mental distress, enhanced escalation of the deterioration effects on my degenerative arthritic knee condition, lost of concentration, the infliction of mental anguish, lost of respect for the Department of Veteran Affairs, and those medical authorities here at Sheridan Va Medical Center and lost of respect for those that suppose to run it.

As a result of the denial of my rights under Both Federal Disability Statutes, denied the requested reasonable accommodation that was sought in effort to limit some of the severe pain, suffering and hardship placed upon my serious knee condition(s), discriminated against this disabled individual based upon matters that related to my disability, for which, I seek compensatory damages, general damages, monetary damages, irreparable damages, special damages, nominal damages, against Ms. Deborah Mcalpine, Mr. John Doe, Chief/Director of The Sheridan Va Medical Hospital, Sheridan Va Medical Center, The United States, while

/4

causing the infliction of a great amount of pain and suffering for which suffering can't be identified by the plaintiff in words. Thereby justifying the seeking of payment in the amount of $6,000,000, jointly, severally, individually, and further seeking any other equitable relief identified by the court that it deems necessary and just, and for the costs of this action, an for attorney fees.

As a result of the gross negligent, misrepresentations, displaying a reckless, deliberate and the intentional wanton infliction of pain, outrageous misconduct, acts that were while acting in concert, jointly and individually, while acting in both their individual and official capacities against Ms. Lisa Carroll, Ms. Tammy Well, Ms. Jackie, patient advocate, Jane doe intake nurse, whose actions were also those that failed to intervene or attempt to prevent the wrongful action imposed upon this veteran in violation of my 8th, 14th Amendment rights under the U.S. Constitution for which, compensatory damages is sought in the amount of $3,000,000, jointly, severally, and individually while acting in both their individual and official capacities, and any other equitable relief deemed just and necessary by the Court and the Jury if at all allowed.

As a result of the abuses suffered by the enforcement of policies, customs, practices, and the failure to provided the necessary supervision, instructions, training, and those inactions that failed to or refused to prevent the unnecessary suffering ,for which, I was required to endure and thereby had to tolerate on my own, the suffering of a substantial amount of pain associated with the extremely damage to my knee conditions, denied the required prompt and appropriate medical treatment that sought to be address under the due process clause, the equal protection of right clause, the ADA, The RA, and under 38 C.F.R. §17.33a,for which, I seek compensatory damages in the amount $2,000,000, jointly, severally against The Director, The Sheridan Va

*15*

Medical Center, and the United States, and further seek any other just and equitable relief that this court deems necessary and required, and the costs of prosecuting this action.

As a result of the actions and inactions, of Ms. Lisa Carroll, Ms. Tammy Well, The Director/Chief of Sheridan Va Medical Center, Ms. Jackie,, Ms.Deborah Mcalpine, whose actions and inactions was the approximate cause of the enhanced suffering inflicted upon this Veteran, subjected to acts that were arbitrary and capricious, while acting in concert with one another, for which damages in the amount of $2,000,000, is sought individually, jointly or severally in the amount indicated above, and for any other equitable relief deemed necessary buy the court and for the costs associated with the processing of this action.

As a result of the acts and inactions that were in misrepresentation, fraud, corrupt deceptional abuses, acts that were intended to impose hopelessness and suffering while committing impermissible interference with the already in place prescribed course of treatment, acts that freely denied the requested pain specialist, acts that impermissibly recommended treatment of medications for the treatment of my Chronic Degenerative Bilateral arthritic knee condition(s) Medications that were not authorized by the FDA for treatment of my severe pain medical ailments, acts to attempted to harass, associated with the denial of access to Medical Records, in violation of the Freedom of Information Act, my rights under 5U.S.C. 552(g),et., seq., failure and refusal to provide the prompt and appropriate medical treatment, acts that were while in concert, jointly and those that were overt acts intended to impose pain and suffering, acts that were punitive, acts that were enforced to imply that they could prescribe any medication for any condition that the medication isn't indicated by the FDA to treat. The failure of the appropriate officials who were required to provide training, memos, instructions about the prescribing of medications, such as, Nuerontin for my pain, for which, the drug is only approved to treat

/6

epilepsy, thereby causing me to receive what could be said to be no treatment at all. While acting

in their individual and official capacities, For which, I seek damages in the amount of

$3,000,000, jointly severally, or individually against Ms.Kathy Swank, Lisa Carroll, Tammy

Well, John Doe Director/Chief, Nurse Jackie , all of the medical Sheridan Va Medical facility,.

Deborah Mcalpine, and for the court to provide any other equitable relief that it deems just and

necessary while including the costs associated with processing this action, the time by way of

attorney fees that it took to initiate and prosecute this action.

Dated this $\underline{28}$ day of January, 2013.


**Wherefore the plaintiff Cornelius Moore hereby states that the facts and**
**statements herein alleged are statement made under the penalty of perjury and are made**
**with the believed to be correct occurrences as they happened and that my statement a true**
**and correct as indicated in this action.**


Respectfully Submitted,

By: Cornelius Moore

/7

## COUNT 2

1. The plaintiff begins this claim by providing some of the many unprofessional misconduct initiated and freely practiced by Defendant, Ms. Jacquelyn Frank, Who is a Registered Nurse at the Sheridan Va Medical Center, located at 1898 Fort Road, Bldg.#64, Sheridan, Wyoming 82801.

2. Plaintiff asserts that the claims that is sought to be addressed against Ms. Jackie, RN are those that relates to her intentional denial of my request to be provided Reasonable Accommodation as required under Both Federal Disability Acts and thereby discriminated against this disabled based on my disability. That I am a qualified individual as required to obtain the protection provided by both Federal Disability statutes, The ADA & the RA.

3. It is alleged that during the periods of December 13, 2012 up until present, (January 2013) Ms. Jackie has disguised her actions that were those that sought to subject this plaintiff to cruel and unusual punishment. In particular, In one of the sick-call evaluations conducted by Ms. Jacquelyn Frank she made me believe that she would live up[ to her word, When she informed me that she would do everything in her power to see that I receive the appropriate medications to treat my severe Degenerative Bilateral arthritic knee condition(s). Ms Frank's actions also at the sick-call meetings had around the periods of December 20, 2012 thru January 15, 2013 were deceptional acts of being concerned about the fact that Defendant Deborah Mcalpine had only caused just one of the many prescriptions to be provided directly to me from the Pharmacy Department in an effort to limit the amount of pain and suffering endured and inflicted as a result of being required to walk long

/8

distances from Unit 64 all the way to Unit 6 to obtain my prescriptions from the window in those units. That the Sheridan Wyoming VA Medical Center is a federal facility that is receiving federal funding and is thereby prohibited from discriminating against the disabled based on my disabilities by those is reception of federal funding.

4. The plaintiff also asserts that Ms. Frank has sought to have entered in my Medical File, Information that were intended to retaliate against plaintiff because of the complaints raised against her and her colleagues. That on or about December 20, 2012 and after that date, Ms. Frank sought to prohibit me from having any form of the requested scheduled appointments with Ms. Mcalpine, My primary Care provider, in an effort to ignore my numerous complaints that were brought to her attention concerning being prescribed Nuerontin for pain, Denied the reasonable accommodations, denied effective medication that provides some actual form of alleviation to my recurring excruciating pain symptoms to my knees.

5. Jackie Frank, was indicated by the Patient advocate to be the one responsible for denying me the requested reasonable accommodation, failed to properly document the adverse affects of the ineffective prescriptions provided to me by the medical staff of Sheridan Va medical Center, dating from the period of December 13, 2012 thru present. Ms. Frank is alleged to be responsible for being the approximate cause of my pain and suffering while taking no action on the information provided to her that relates to their impermissible use of my alleged drug and alcohol disorder's to deny me the appropriate pain prescriptions that were in place prior to my arrival to the Sheridan Va medical center, on or about the 13 of December, 2012. Ms. Frank is

/9

alleged to have this strong capability of ignoring the issues at hand and then taking a

matter and making it appear that other issues should be addressed other then the

complaints raised by this plaintiff. There are so many violations of my Eighth,

Fourteenth Amendments rights to free from deliberate indifference towards me

serious medical conditions, My Knees and my liver condition that has previously

been diagnosed as Alcoholic Liver condition. That the drugs that are presently being

provided to me by the medical personnel at this facility are the type of meds that

could be said to be provided for killing me. Ms. Frank failed to monitor my liver

enzymes. I also seek to have all these issues addressed under various theories under

the ADA & RA, under the Eighth and Fourteenth Amendments. Under to cruel and

unusual punishment standard. Under the Deliberate Indifference standard, under the

claims that my prescribed course of treatment was impermissibly interfered with in

violation of the 8th, 14th, and the both federal disability statutes, The ADA & RA.

6. That the plaintiff seeks to reserve his right to amend this complaint at a later stage of
   this civil rights action.

7. The plaintiff asserts that I am required to suffer my at times debilitating bone on
   bone knee pain without any adequate or effective alleviation for my severe
   Degenerative Bilateral Arthritic Knee Condition(s).

8. My health is deteriorating at a pace beyond recognition. That I'm always with the
   feeling of being tire a lot, can't concentrate, observing the more regular pains to my
   stomach as a result of efforts being placed upon me to not miss one dosage of the
   liver killing prescriptions.